CITY OF ST. LOUIS v. ROBINSON, *Appellant.*

Division Two, October 7, 1896.

St. Louis City: ORDINANCE: GARBAGE AND OFFAL. The trimmed heads, feet, and bones of beef cattle from which the flesh and skin have been separated and which are clean and fresh and emit no offensive odor, do not fall within the definition of either "garbage" or "offal" used in an ordinance of the city of St. Louis, regulating the keeping, storing, and handling of such matter and imposing a penalty for hauling the same in the streets, except in wagons specially licensed for the purpose.

*Appeal from St. Louis Court of Criminal Correction.* HON. J. R. CLAIBORNE, Judge.

REVERSED.

*C. P. & J. D. Johnson* for appellant.

(1) The evidence fails to show that the defendant was hauling "garbage and offal," as charged in the information, or as contemplated by the ordinance in question. *State ex rel. v. Smith*, 114 Mo. 180; *State v. McCance*, 110 Mo. 398; *Dudley v. Tel. Co.*, 54 Mo. App. 391; *Connel v. Tel. Co.*, 108 Mo. 459, 462, and cases cited; *Rozelle v. Harmon*, 103 Mo. 339, 343, and cases cited; *Warren v. Paving Co.*, 115 Mo. 572; Potters' Dwarris on Statutes, 193; *State v. Jones*, 102 Mo. 305; Black on Interpretation of Law, 203. (2) The evidence also fails to show that the defendant "did use a cart,

wagon, or other vehicle, for the purpose of hauling garbage or offal from hotels, restaurants, boarding houses, or dwelling houses, without having displayed '' thereon a metallic plate with the words, '' Licensed to remove garbage,'' as charged in the information, or as contemplated by the ordinance. See cases cited, *supra.* (3) Defendant was not engaged in the business or. occupation of hauling "garbage" or "offal," and was not liable for the payment of the license tax imposed by the ordinance; hence, he was not guilty of any violation of that ordinance or of either of the offenses charged in the information. Cooley on Taxation, p. 582; *St. Louis v. Grone,* 46 Mo. 574; *St. Charles v. Nolle,* 51 Mo. 122; *Hannibal v. Price,* 29 Mo. App. 280; *Farwell v. Chicago,* 71 Ill. 269; *Joyce v. East St. Louis,* 77 Ill. 156; *Collinsville v. Cole,* 78 Ill. 114; *St. Louis v. Weitzel,* 130 Mo. 600.

*W. C. Marshall* for respondent.

The object of the ordinance involved in this case was to require the inoffensive transportation of offensive matters through the streets, and is within the police power of the city. The fact that a defendant does not make it his occupation or business to haul garbage in no manner impairs the obligation of the ordinance. In fact, it is no more of a defense in this case than it would be a defense for a person charged with murder to plead that he was not engaged in the business of murdering, and that it was not his steady occupation; or for a person indicted for larceny to plead that his regular occupation was not theft. This case falls within that of *St. Louis v. Weitzel,* 130 Mo. 600.

BURGESS, J.—This action is prosecuted against defendant to recover a fine or penalty for the violation

of an ordinance of the city of St. Louis. In the court of criminal correction of said city to which the case was appealed by defendant, he was tried, convicted, and his punishment fixed at a fine of $25, for which judgment was rendered, and he again appealed.

The complaint is as follows:

"*John Robinson, to the City of St. Louis, Dr.*

"To two hundred dollars, for the violation of an ordinance of said city, entitled: 'An ordinance regulating the keeping, storing, and handling and licensing the removal of garbage, grease, offal, and other refuse matter composed of either animal or vegetable matter, and to repeal section three hundred and ninety-four, article ten, chapter fourteen, and sections five hundred and seven and five hundred and fourteen, article sixteen, chapter fourteen, of the revised ordinances of eighteen hundred and eighty-seven, and prescribing penalties for the violation thereof, and fixing a license tax on vehicles used for the removal of garbage.'

"And it is further charged that the said John Robinson on the fourth day of February, 1893, and on divers other days and times prior thereto, did haul through the streets of the city of St. Louis, garbage and offal in carts, wagons, barrels, and tubs that were not water-tight, and were not adequately and tightly built, so that the contents thereof could not fall, spill, or leak therefrom, and were not covered with tight fitting wooden and metallic covers, and such wagons, carts, barrels, and tubs were kept, stored, and placed in places in the city of St. Louis, where their presence became offensive to the citizens of said city, and caused much discomfort and annoyance to said citizens, contrary to the ordinance of the city of St. Louis, in such cases made and provided.

"And, it is further charged that the said John Robinson on the fourth day of February, 1893, and on

divers other days and times prior thereto did haul and remove garbage and offal from hotels, dwelling houses, boarding houses, restaurants, and tenement houses in the city of St. Louis without first having obtained a license from said city therefor, and did haul said garbage and offal for the purpose of being used as food for animals located within the limits of the city of St. Louis, and did haul said garbage and offal to rendering and converting establishments which are conducted in an offensive manner, injurious to the health of the citizens of St. Louis, and which are under condemnation by the board of health of the city of St. Louis, and which have not complied with all the provisions of the ordinances governing the establishment, erection, and maintenance of rendering factories, contrary to the ordinances of the city of St. Louis in such cases made and provided.

"And it is further charged that the said John Robinson on the fourth day of February, 1893, and on divers other days and times prior thereto, did use a cart, wagon, or other vehicle for the purpose of hauling garbage and offal from hotels, restaurants, boarding houses and dwelling houses, without having displayed on one side of the said cart, wagon, or other vehicle a metallic plate, having cast thereon, in raised letters, the words 'Licensed to Remove Garbage,' and the figures indicating the number of the plate and the year for which the license is issued, contrary to the ordinance of the city of St. Louis in such cases made and provided.

"On information of,

"L. HARRIGAN, Chief of Police.

"Chief of Police of City of St. Louis."

The ordinance is as follows:

" An ordinance regulating the keeping, storing, and handling, and licensing the removal of garbage,

grease, offal, and other refuse matter composed of either animal or vegetable matter, and to repeal section three hundred and ninety-four, article ten, chapter fourteen, and sections five hundred and seven and five hundred and fourteen, article sixteen, chapter fourteen, of the revised ordinances of eighteen hundred and eighty-seven, and prescribing penalties for the violation thereof, and fixing a license tax on vehicles used for the removal of garbage.

"Be it ordained by the municipal assembly of the city of St. Louis, as follows:

"Section 1.   The words garbage and offal, when used in this ordinance, shall be held to include every accumulation of both animal and vegetable matter, liquid or otherwise, that is received from kitchens, and also all putrid and unsound meat, beef, pork, fish, decayed or unsound vegetable or fruit, the tankage from rendering establishments, and shall also be held to include refuse from slaughterhouses and pork houses.

"Sec. 2.   No person, firm, or corporation shall throw, cast, or deposit any garbage or offal of any kind whatever into or on any gutter, street, alley, public place, vacant lot, or water course within the limits of the city, or into the river Des Peres or the Mississippi river inside the boundaries of the city; any person violating the provisions of this section shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not less than ten dollars nor more than one hundred dollars; and each violation thereof shall constitute a separate offense, punishable as provided herein.

"Sec. 3.   It shall be the duty of every owner, tenant, lessee, and occupant of any and every dwelling, tenement house, lodging house, hotel, restaurant and boarding house to provide and at all times cause to be kept and provided, within such building or on the lot

on which said building is erected, suitable and sufficient boxes, barrels, or tubs for the receiving and holding, without leakage and without being filled to within four inches of the top, all the garbage, offal or liquid substance derived therefrom that accumulates on said premises within a period of thirty-six hours, and all such boxes, tubs, or barrels shall be placed at all times in such places as to be readily accessible for removal and emptying, and where they shall not be a public nuisance; and no person not for that purpose authorized shall interfere with them or with the contents thereof. Any person violating the provisions of this section shall be deemed guilty of a misdemeanor, and, upon conviction, shall be fined not less than five nor more than fifty dollars; and each violation thereof shall constitute a separate offense, punishable as provided herein.

"Sec. 4. All garbage and offal shall be removed and hauled through the streets of the city in watertight carts, wagons, or barrels only; all said carts' or wagons shall be strongly built, and the sides and front and rear ends shall be so high above the load or contents that no part of such contents or load shall fall, leak, or spill therefrom, and said carts or wagons shall be adequately and tightly covered, and all barrels or tubs shall have tight-fitting wooden or metallic covers, and when not in use all such carts, wagons, and all implements used in connection therewith shall be stored and kept in some place where no needless offense shall be given to any of the citizens of the city; and any person removing garbage or offal in any other manner, or violating any of the provisions of this sections shall be deemed guilty of a misdemeanor, and upon conviction shall be fined not less than twenty-five dollars nor more than two hundred dollars; and each violation thereof

VOL. 135 mo—30

shall constitute a separate offense, punishable as provided herein.

"Sec. 5. No person or persons, firm or corporation, shall haul or remove garbage or offal from hotels, dwelling houses, boarding houses, restaurants or tenement houses without having first obtained from the city collector a license to do so, and any person or persons, firm or corporation, engaged in the hauling of garbage or offal either under contract with the city or otherwise, shall pay an annual license of twenty dollars in advance for each and every cart or wagon by him or them used; said license shall be issued in the form and under the regulations as provided for by this ordinance. No license shall be issued by the collector for the removal of garbage or offal unless the parties applying for such license shall first file with the collector a certificate signed by the board of health or chief sanitary officer of the city stating that the party making such application has filed with the health department a statement as provided for in section six of this ordinance. No license shall be issued for a longer period than one year, and said license shall not be transferable, and it shall be unlawful for any person or persons, firm or corporation engaged in the hauling or removal of garbage or offal to permit same to be fed to animals within the limits of the city. No license shall be issued to haul or remove garbage or offal to any rendering or converting establishment which shall be conducted in an offensive manner, or which shall at the time of making application for said license be under condemnation as a nuisance by the board of health, or which shall not have complied with all the provisions of the ordinances governing the establishment, erection, and maintenance of rendering factories. Any person or persons, firm or corporation

failing to comply with or violating any of the provisions of this section shall be deemed guilty of a misdemeanor, and, upon conviction, shall be fined not less than fifty dollars nor more than two hundred dollars, and each violation thereof shall constitute a separate offense, punishable as provided herein, and shall furthermore forfeit his or their license.

"Sec. 6. All persons, firms, or corporations desiring to have their garbage or offal removed by persons other than the contractor, or any persons, firms or corporations desiring to haul or remove garbage or offal, shall file with the board of health or chief sanitary officer an application, which application shall state at what point the garbage or offal is located; to what point within or without the limits of the city it is proposed to remove it; the number of carts and wagons proposed to be used; the location where the carts, barrels, wagons or tubs are kept when not in use, and that said offal and garbage is not to be fed to animals within the limits of the city of St. Louis. On the filing of such application the chief sanitary officer shall furnish to such parties a certificate to be filed with the collector, the number of which certificate shall correspond with the number on the application.

"Sec. 7. All carts, wagons, or other vehicles, that shall be used in hauling garbage and offal from hotels, restaurants, boarding houses and dwelling houses, shall have displayed on one side thereof metallic plates, having cast thereon in raised letters the words: 'Licensed to remove garbage,' and the figures indicating the number of the plate and the year for which the license is issued, which metallic plates shall be furnished by the city register to the collector; the record of such metallic plates shall be kept by the collector, and the number of the license shall correspond with the number on the metallic plate. Any person failing or neglecting to conform to

the provisions of this section shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not less than ten nor more than one hundred dollars, and each violation thereof shall constitute a separate offense, punishable as provided herein.

"Sec. 8. It shall be the duty of the police to see that the provisions of this ordinance are complied with, and it shall also be the duty of the garbage inspector to see that no garbage is permitted to remain on the premsies of the residents of the city, and to report to the board of health all violations of this ordinance that may come under his notice. ·

"Sec. 9. All licenses to remove garbage and offal shall be issued in blank to the collector by the register, under the seal of the city, and shall be in the form prescribed by law.

"Sec. 10. Section three hundred and ninety-four of article ten, chapter fourteen, and sections five hundred and seven, and five hundred and fourteen of article sixteen of the revised ordinances of eighteen hundred and eighty-seven, are hereby repealed."

The evidence showed that when defendant was arrested he was hauling a lot of clean, trimmed, and skinned heads, ribs and feet of beef cattle through the public streets of the city of St. Louis in a wagon closely covered with a tarpaulin.

The bones were fresh, but dry, and emitted no offensive odor. The wagon and contents belonged to P. B. Mathiason & Company, who were then engaged in manufacturing glue, bone black and fertilizers, in the city of St. Louis, out of materials of that kind, and who had purchased the load that defendant was prosecuted for hauling from a pork packing and sausage manufacturing establishment, for manufacturing purposes. The defendant at the time of his arrest, was driving the team for Mathiason & Company. The lat-

ter had a regular vehicle license from the city of St. Louis, for which they had paid the license tax for the wagon, but neither they nor the defendant had a license for removing garbage such as that required by section 5 of said ordinance.

Defendant insists that there was an entire failure of proof, and that the judgment of the court below should be reversed on that ground. There is much force in this contention unless the words "garbage and offal" as used in the ordinance, comprehend within the meaning of one or both of them trimmed and skinned heads, ribs, and feet of cattle, such as the evidence showed defendant was hauling at the time alleged in the complaint. In the Century Dictionary garbage is defined as follows: "1. Originally, the entrails of fowls, and afterwards of any animal; now, offal or refuse organic matter in general; especially the refuse animal and vegetable matter from a kitchen. 2. Any worthless, offensive matter."

Offal is defined as follows: "That which falls off, as a chip or chips in dressing wood or stone; that which is suffered to fall off as of little value or use. 2. Waste meat; the parts of a butchered animal which are rejected as unfit for use. 3. Refuse of any kind; rubbish."

It seems clear to us that the articles which defendant was hauling do not come within the definition of "garbage or offal" as thus defined. They were clean, trimmed bones, having no meat upon them and did not emit any offensive odor. After the grease and glue were dissolved or extracted from the bones, they were dried and ground into fertilizers; the hoofs were exported. If either the bones or hoofs come within the meaning of the ordinance, so do hides taken from beef cattle. These are all articles of commerce, so that it can not be said that any of them were offal, "or refuse

organic matter," or that they were "refuse animal or vegetable matter from a kitchen, or, that they were worthless, offensive matter, or waste meat; the parts of butchered animals which were rejected as unfit for use, or refuse of any kind, or rubbish."

While the offense with which defendant is charged is not criminal, being for the violation of a city ordinance, it is penal in its character and in derogation of common right; the ordinance must, therefore, be strictly construed and in order that the judgment of conviction may be upheld the proof adduced must bring defendant clearly within its meaning. In a criminal prosecution it was said: "If the language be clear it is conclusive. There can be no construction where there is nothing to construe. The words must not be narrowed to the exclusion of what the legislature intended to embrace; but that intention must be gathered from the words, and they must be such as to leave no room for a reasonable doubt upon the subject." *U. S. v. Hartwell*, 6 Wall. 396.

The same rule of construction applies in case of a prosecution for the violation of a city ordinance for whose violation a fine or imprisonment is imposed. The title of the ordinance is, "An ordinance regulating the keeping, storing, and handling, and licensing the removal of garbage, grease, offal and other refuse matter," etc., and while not controlling in the construction of the various sections of its provisions, it may be looked to in passing upon the question as to whether the hauling of bones, and hoofs of beef cattle, which had been stripped of all flesh and which emitted no offensive odor, comes within its meaning and a violation of the ordinance. The title seems to indicate a purpose on the part of the city to prevent the accumulation of slops, and refuse matter of like character, which accumulate in the city, emit noxious and un-

wholesome odors, injurious to the health of her citizens, and not to the control and hauling of bones and hoofs, which do not emit such odors.

This position is sustained by the whole ordinance. No tight or closely covered wagon was necessary in this instance in order to prevent the escape of noxious odors or the dripping of offensive matter, as in hauling garbage and refuse matter, and it seems to us to require a strained construction of it, to bring the offense with which defendant was charged within its meaning, something the law does not permit in such circumstances. He was simply the employee of Mathiason & Company, who owned the wagon, and the team that he was driving. His employers were engaged in the manufacture of glue, boneblack and fertilizers in said city from the bones of animals; they had purchased the load and were having it hauled to their factory for that purpose. They had paid a vehicle license tax on the wagon which was in force at the time, and under our view of the case were not required to take out an occupation license for the purpose of hauling the bones and hoofs.

As the evidence failed to show that defendant had violated the ordinance as charged, the judgment is reversed and the defendant discharged.     GANTT, P. J., and SHERWOOD, J., concur.