# NASH v. DISTRICT OF COLUMBIA.

---

POLICE REGULATIONS; GARBAGE.

1. The District commissioners may lawfully require the destruction of garbage and refuse even when containing some elements of value, regulate the removal and disposition of such substances, designate the

agents who may so remove the same, and prohibit all persons other than the District contractor or his agents from carrying such substances through the streets; but all matter which may be laid aside in the preparation of dishes for the table is not necessarily garbage and subject to the garbage regulations.    (Following *Campbell* v. *District of Columbia,* 19 App. D. C. 131; *Dupont* v. *District of Columbia,* 20 App. D. C. 477; and *Mann* v. *District of Columbia,* 22 App. D. C. 138.)

2. Grease and cracklings rendered from the fat of fresh meat, cooked and carried away within twenty-four hours, is not garbage within the meaning of Police Regulations, D. C. art. 14, sec. 1, defining garbage to be the "refuse of animal and vegetable foodstuffs," and prohibiting persons other than the District garbage contractor from carrying garbage through the streets of the District.

No. 1726.    Submitted December 6, 1906.    Decided January 15, 1907

In Error to the Police Court of the District of Columbia.
*Judgment reversed.*

The Court in the opinion stated the facts as follows:

In the police court the information in this case charged Stephen H. Nash with carrying and conveying certain garbage in a vehicle through the streets of this city, Nash not being the city contractor, contrary to the garbage regulations of this District.    Grimsley, a police officer, testified that on August 16, 1906, he had arrested Nash on the charge of hauling garbage, and had found in the wagon driven by Nash cans and barrels, and that two of the cans contained grease and a lot of meat which was offensive.    The defendant was not in the employ of the city contractor for the removal of garbage.    The two cans were of galvanized iron, with air-tight tops.    The contents of the cans were an oily substance with meat, rendered to some extent, though bits of meat were found in the grease.    Lee, a sergeant of police, at Grimley's instance, looked into these cans, and he, too, saw some fat, with pieces of meat in it, and when the lid was taken off he detected an odor, "it smelled a little offensive like."    This sergeant had been a butcher, and knew from the handling of meats in hot weather that such meat as he

saw in the cans would have an odor after a few hours' exposure;
and the particles of meat mixed with grease looked as if the
grease had been rendered from the frying of fat, and the meat
remnants had not been wholly rendered. On the part of Nash,
the evidence showed that he was employed as a driver by the
Norton Manufacturing Company, in Alexandria county, Vir-
ginia, where the company is engaged in the manufacture and
refining of grease and tallow; that he obtained the grease from
the New Willard Hotel, and had just driven out of the alley
adjoining that hotel when he was arrested by Grimsley. This
witness testified that the bits of meat were put on a range in the
hotel, in a pan, and reduced to liquid grease, the parts known
as cracklings being not fully reduced, and on this day he had
obtained 175 pounds of grease, the accumulation of Willard's
Hotel during twenty-four hours, and had paid 2 cents a pound
therefor in behalf of his employer. The can for the reception
of the grease is located near the range in the New Willard kitch-
en, and in it the cook pours the liquid grease from the frying of
beef, pork, chicken, lamb, and the like, while the cook throws
the remaining stuff into the garbage cans, located at a different
place in the kitchen.

Norton, the secretary and general manager of the Grease Re-
fining & Fertilizer Company, testified that his company em-
ployed the defendant to buy from the hotels grease from animal
fats, for which his company paid from $1\frac{1}{2}$ cents to 3 cents per
pound; that it is his duty to inspect this material, and that it
consists of grease from the rendering of fat from meat, there-
after used to produce tallow and refined grease. His company
buys $20,000 worth of this material yearly, which is simply
refuse lard and fats which have been melted and cooked in the
pan and poured into the can. Neither Norton nor his driver
would ever buy decomposed meats, nor have they obtained raw
fats from hotels, from which they receive only grease and crack-
lings, and from these there arises no noxious smell. Plaff, the
*chef* at the New Willard Hotel, on the 15th of August, 1906,
and prior thereto, had charge of the kitchen and of all the food-
stuffs, and testified that on that day Nash, the defendant, pur-

chased cans of grease for 2 cents per pound; that the cans contained the grease from meats; that these had been put into a big grease kettle and rendered. It was such grease as had become too dark to be used for frying purposes, and in the rendering of such fat there remained cracklings. At the same time this *chef* caused all rotten, decomposed, or stale meats to be put into separate garbage cans in the kitchen, and on this August day the defendant's can contained nothing but grease and cracklings, and there was no offensive odor from it. It was simply clean grease which had gone through a cooking process, and would not exude an offensive odor for three or four days after cooking.

The judge of the police court found Nash guilty, and his decision rests upon the following regulations concerning garbage: "The word 'garbage' shall be held to mean the refuse of animal and vegetable foodstuffs. No other persons or party, except the District contractor, his, their, or its agents, shall carry, convey, or transport through the streets, alleys, or public places of the said District any garbage, noisome dead animal, decayed fish, or refuse animal or vegetable matter."

*Mr. George P. Hoover* for the plaintiff in error.

*Mr. Edward H. Thomas,* Corporation Counsel, and *Mr. Jas. Francis Smith* for the defendant in error.

Mr. Justice McComas delivered the opinion of the Court:

1. It is a rule that a municipal corporation has no power to treat a thing as a nuisance which cannot be one; but it is equally settled that it has the power to treat as a nuisance a thing that, from its character, location, and surroundings, may become such. In doubtful cases, where a thing may or not be a nuisance, depending upon a variety of circumstances requiring judgment and discretion on the part of the town authorities in exercising their legislative functions under a general delegation of power like the one we are considering, their action under

such circumstances would be conclusive of the question. *Walker* v. *Jameson,* 140 Ind. 598. See also *Grand Rapids* v. *De Vries,* 123 Mich. 570; *Ex parte Vandine,* 6 Pick. 187, and *State* v. *Payssan,* 47 La. Ann. 1029.

2. The question in the case at bar is whether or not the material which the defendant was conveying was susceptible of putrefaction or decomposition. If it had been refined to such an extent as to prevent further decomposition, then it is conceded that the appellant's contention would have been well founded; but he relies upon the fact that this matter had undergone, according to the testimony in the case, a process which, at best, only diminished its noxious properties. The testimony brought out by the appellant's questions with respect to the effect of heat, etc., on the contents of the cart, show an assumption on his part that this matter was susceptible of further decomposition. The testimony of the officers is convincing that it was, in fact, putrid. It is submitted that the judgment of the court below, on the evidence, could not have been otherwise, and should be affirmed.

The law is well settled respecting garbage regulations. Every intendment is to be made in favor of the lawfulness of the exercise of municipal power reposed in municipal corporations to make regulations to protect the public health and promote the welfare of the people in the community, and the officers having charge of the execution of such regulations should be sustained in the proper enforcement of reasonable regulations. The cremation of garbage as a means for the protection of the public health, when proceeding upon reasonable grounds, cannot be regarded as the taking of private property for public use without compensation, simply because such garbage and house refuse may have had at the time some element of value for certain purposes. The scavenger receives that which, if separated, might have value and be harmless, mingled with that which is in itself not only worthless, but noxious. The commingled substances could not be separated by the authorities, which promptly and properly convey them away to be destroyed by fire. It is a controlling obligation of the District authorities,

which they could not properly ignore, to protect the health of its people in all lawful ways; and in the fair and reasonable exercise of the *police* power they may rightfully require the destruction of garbage and refuse, even when containing some elements of value; and these authorities may regulate the removal and disposition of such substances, and designate the agents who may rightfully remove and dispose of the same, and may lawfully prohibit all other persons except the District contractor or his agents from carrying through the streets such substances. See *California Reduction Co.* v. *Sanitary Reduction Works,* 199 U. S. 306, 50 L. ed. 204, 26 Sup. Ct. Rep. 100; *Gardner* v. *Michigan,* 199 U. S. 325, 50 L. ed. 212, 26 Sup. Ct. Rep. 106; *Dupont* v. *District of Columbia,* 20 App. D. C. 477; *Campbell* v. *District of Columbia,* 19 App. D. C. 131; *Mann* v. *District of Columbia,* 22 App. D. C. 138. These cases show that the regulations we are here considering are a valid exercise of the police power; yet, as Justice Shepard well said in the *Dupont Case,* supra, each case arising under these regulations must depend upon its own peculiar circumstances. "We are not to be understood as holding that all matter which may be laid aside, merely, in the preparation of dishes for the table, is necessarily garbage, and therefore subject to the same regulation in all respects. We agree with the supreme court of Connecticut in the case before cited (*State* v. *Orr,* 68 Conn. 101, 112, 34 L.R.A. 279, 35 Atl. 770), that there may be some things as, for example, meat trimmings, fruit and vegetable parings, and the like, that are capable of unobjectionable uses. These the owner could not be compelled to throw away, but might make any reasonable use of before they could become offensive." And, as was said in *State* v. *Orr:* "Whatever of this description is not abandoned as worthless remains property, which, so long as it does not constitute a nuisance, may be sold or otherwise disposed of at the will of the owner. If the evidence had shown both that the contents of the defendant's cart, while they had been rejected for table use, were not offensive, and that they were in his possession as the agent or vendee of the original owners, he might have been entitled to a verdict, for he could

not then have been engaged in the business for which a license was required." The proof in this case brings it within the exception so clearly recognized by Justice Shepard, speaking for this court, and by Justice Baldwin speaking for the supreme court of Connecticut.

The two police officers agree that the contents of the two cans looked as if the grease had been rendered from the frying of fat, and bits of meat appeared which had not been wholly rendered. One officer said the cans emitted no smell until the lids were taken off, and, though he first said the contents were grease and rotten meat, he later qualified this statement, saying the contents were grease and bits of meat that had been rendered, and that it was offensive; the other officer said it was grease and meat, that part of the meat was not wholly rendered and smelled "a little offensive like." On the part of the defendant, however, Norton testified that he employed the driver Nash to buy from the hotels grease from animal fats, and never to buy decomposed meats, and that grease and cracklings have no noxious smell, while Pfaff, the *chef* at the New Willard Hotel, testified that he has charge of all the foodstuffs and of the kitchen, and that the grease which he had sold for 2 cents per pound and put into these cans had first been placed in a large grease kettle, and that it contained only the renderings of such fat and the cracklings, while at the same time he had caused all rotten, décomposed, or stale meats to be put into separate cans for garbage. The evidence is convincing that the contents of these two cans was simply clean grease and cracklings, which after the cooking process emitted no offensive odor, and that all of this material had been cooked within twenty-four hours. It is not disputed that the garbage of the hotel was placed in garbage cans and carried away by the city contractor's agents, and it is clear that the grease and cracklings purchased by Nash and then being hauled away to the factory of the Norton company was property which did not constitute a nuisance, which Pfaff had a right to sell, which Nash had a right to buy and haul away in the two galvanized, air-tight, iron cans. In our opinion, such grease and cracklings rendered

from the fat of fresh meat, cooked and carried away within twenty-four hours, was not garbage within the meaning of these regulations, and Nash should have been acquitted. We need not further discuss this matter. The case before us is somewhat similar to *St. Louis* v. *Robinson,* 135 Mo. 460, 37 S. W. 110, and see *Grand Rapids* v. *De Vries,* 123 Mich. 580, 82 N. W. 269, where it was said of a similar regulation that the ordinance does not attempt to regulate in any manner whatever the disposition of wholesome substances by the householder. It is aimed only at refuse, and the householder is at liberty to consume or sell or give away such leavings of the kitchen. The judgment in this case must be reversed with. costs, and this cause remanded, with directions to vacate its judgment and to discharge the defendant, and it is so ordered.     *Reversed.*