In re Prosecution of James HALL.

No. 11–SP–591.

District of Columbia Court of Appeals.

Argued Sept. 27, 2011.

Decided Nov. 17, 2011.

Cory L. Carlyle, for James Hall.

Todd S. Kim, Solicitor General, with whom Irvin B. Nathan, Attorney General for the District of Columbia, Rosalyn Calbert Groce, Deputy Solicitor General, and Janice Y. Sheppard, Assistant Attorney General, were on the brief, for the District of Columbia.

Anne Y. Park, Assistant United States Attorney, with whom Ronald C. Machen Jr., United States Attorney, and Roy W. McLeese III, Assistant United States Attorney, were on the brief, for the United States.

Before BLACKBURNE–RIGSBY, THOMPSON, and OBERLY, Associate Judges.

OBERLY, Associate Judge:

We are asked to decide whether the Office of the United States Attorney for the District of Columbia ("USAO") or the Office of the Attorney General of the District of Columbia ("OAG") is the proper prosecutor for the possession of unregistered firearms and unlawful possession of ammunition. Congress has divided prosecutorial authority between the two offices; "roughly speaking," it has assigned "minor crimes" to the OAG and more "serious matters" to the USAO. *In re Crawley,* 978 A.2d 608, 610 (D.C.2009). Because the District of Columbia long has possessed the authority to regulate the possession of firearms and ammunition, including the au-

thority to punish violations of these regulations with both fines and imprisonment, we hold (as both the USAO and the OAG urge) that the OAG is the proper authority to prosecute the possession of unregistered firearms and unlawful possession of ammunition.

## I. Facts and Procedural History

James Hall was arrested in connection with his alleged possession of an unregistered firearm, unlawful possession of ammunition, and carrying a pistol without a license. After the USAO declined to prosecute Hall for carrying a pistol without a license, the OAG charged him with possession of an unregistered firearm ("UF"), in violation of D.C.Code § 7–2502.01 (2001), and unlawful possession of ammunition ("UA"), in violation of D.C.Code § 7–2507.06. Hall objected to being prosecuted by the OAG and moved the trial court to certify the question whether the OAG has the authority to prosecute UA and UF in light of the statutory division of prosecutorial authority between the OAG and the USAO. After initially denying Hall's motion, the trial court, on its own motion, certified the question for summary appellate disposition. *See* D.C.Code § 23–101(f) (2001).

## II. Discussion

### A. Statutory and Regulatory Background

#### 1. Division of Prosecutorial Authority Between the USAO and the OAG

Title 23, Section 101 of the D.C.Code divides prosecutorial authority between the OAG and the USAO for offenses committed in the District. Specifically, § 23–101(a) provides:

> Prosecutions for violations of all police or municipal ordinances or regulations and for violations of all penal statutes in the nature of police or municipal regulations, where the maximum punishment is a fine only, or imprisonment not exceeding one year, shall be conducted in the name of the District of Columbia by the [OAG], except as otherwise provided in such ordinance, regulation, or statute, or in this section.

With some exceptions not relevant here, "[a]ll other criminal prosecutions shall be conducted in the name of the United States" by the USAO. D.C.Code § 23–101(c).[1] This division of authority, which Congress made approximately a century ago, roughly assigns "minor crimes to the OAG, and more serious matters to the USAO." *In re Crawley*, 978 A.2d at 610. D.C.Code § 23–101 further provides that if "any question shall arise as to whether, under this section, the prosecution should be conducted by the [OAG] or by the United States [A]ttorney, the presiding judge shall … certify the case to the District of Columbia Court of Appeals, which court shall hear and determine the question in a summary way." D.C.Code § 23–101(f).

#### 2. Possession of Unregistered Firearms and Unlawful Possession of Ammunition

The current UF and UA provisions are direct descendants of police regulations that similarly prohibited the possession of

---

**1.** D.C.Code §§ 23–101(d) and (e) describe the circumstances in which the USAO and the OAG each may consent to the indictment and prosecution, by the other office, of offenses normally within its own prosecutorial authority. These provisions apply only when the defendant is charged with multiple offenses, some of which are prosecutable by the USAO and some by the OAG. As the United States and Hall agree, these provisions do not apply in this case because Hall is not charged with offenses prosecutable by both the USAO and OAG.

unregistered firearms and the unlawful possession of ammunition. Prior to enactment of the District of Columbia Self–Government and Governmental Reorganization Act (the "Home Rule Act" or the "HRA"), Pub.L. 93–198, the Council of the District of Columbia (formerly the District of Columbia Council) (both, the "Council") was "authorized and empowered to enforce, all such usual and reasonable police regulations ... as the Council may deem necessary for the regulation of firearms, projectiles, explosives, or weapons of any kind in the District of Columbia." D.C.Code § 1–227 (1967) (now codified at D.C.Code § 1–303.43 (2001)). Pursuant to D.C.Code § 1–227, the Council promulgated police regulations governing firearms in 1968. D.C. Police Regulations, arts. 50–55, provided that "no person shall within the District, possess, or keep under his control ... any pistol, or rifle or shotgun unless such person is the holder of a valid registration certificate for such pistol, rifle or shotgun." D.C. Police Regs., art. 51, § 1. The police regulations also provided that no person "shall within the District of Columbia purchase or possess ammunition for a firearm unless he is the holder of a valid certificate of registration issued under the regulations; and unless the ammunition is of the same gauge or caliber as the firearm described in the certificate of registration issued to such person." D.C. Police Regs., art. 53, § 2. Violation of these regulations carried a maximum penalty of a fine of not more than $300 or imprisonment for not more than ten days. D.C. Police Regs., art. 55, § 11.

The Council repealed and replaced Police Regulations, arts. 50–55, with the comprehensive gun control framework of the Firearms Control Regulations Act of 1975, D.C. Law 1–85 (1976) ("FCRA") (codified as amended in D.C.Code Title 7). The provisions of the original FCRA related to unregistered firearms and unlawful possession of ammunition were substantially similar to the police regulations that they replaced. Section 201 of the FCRA provided that "no person or organization shall, within the District receive, possess or have under his or its control any firearm, unless such person or organization is the holder of a valid registration certificate for such firearm." D.C. Law 1–85, § 201. The FCRA further provided that "[n]o person shall possess ammunition in the District of Columbia unless ... [h]e is the holder of a valid registration certificate for a firearm of the same gauge or caliber as the ammunition he possesses." D.C. Law 1–85, § 601. The major difference between the FCRA and the police regulations that it replaced was the FCRA's increased penalties for violation of its provisions. Any person in violation of these provisions could be fined "not more than three hundred dollars or be imprisoned for not more than ten days, *or both.*" D.C. Law 1–85, § 706 (emphasis added).

The current UF and UA provisions are nearly identical to the analogous provisions of the original FCRA, with the exception of the increased penalties provided for their violation. Possession of an unregistered firearm is currently prohibited by the following language: "no person or organization in the District shall possess or control any firearm, unless the person or organization holds a valid registration certificate for the firearm." D.C.Code § 7–2502.01. The current UA statute provides that "[n]o person shall possess ammunition in the District of Columbia unless ... [h]e is the holder of the valid registration certificate for a firearm of the same gauge or caliber as the ammunition he possesses." D.C.Code § 7–2506.01. Any "person convicted of a violation of any provision of this unit shall be fined not more than $1,000 or imprisoned for not more than 1 year, or both." D.C.Code § 7–2507.06.

## B. Analysis

██ Hall contends that UF and UA are "serious misdemeanors" and, therefore, properly prosecuted by the USAO. Specifically, he argues that the penalty provision associated with UF and UA, which provides for a maximum penalty of a fine of $1,000 and imprisonment for one year, is the type of punishment that characterizes serious offenses historically prosecuted by the USAO. We reject Hall's contention because, as police regulations within the meaning of D.C.Code § 23–101, UF and UA properly are prosecuted by the OAG.

██ As noted, the OAG is authorized by statute to prosecute violations of all "police or municipal ordinances or regulations." D.C.Code § 23–101(a). Because the UF and UA provisions are "police or municipal ordinances or regulations," prosecutorial authority lies with the OAG irrespective of the fact that violation of these provisions carries a maximum penalty of both a fine and imprisonment. *District of Columbia v. Smith*, 329 A.2d 128, 130 (D.C.1974) ("We interpret the statute to give prosecutorial authority to the Corporation Counsel [now the OAG] as to all municipal ordinances and regulations, irrespective of the prescribed punishment.").[2]

Although there is no statutory definition of "police or municipal ordinance or regulation," this court has upheld language that is substantially identical to the modern UF and UA provisions as within the Council's power to promulgate police regulations. In *McIntosh v. Washington*, 395 A.2d 744 (D.C.1978), appellants argued that the

FCRA was an invalid exercise of the Council's power under the HRA, Pub.L. 93–198, § 602 (codified at D.C.Code § 1–206.02). The HRA expanded the legislative power of the District, specifically permitting the Council to amend the D.C.Code's criminal law titles; however, the HRA placed a moratorium on the Council's power to enact laws relating to crimes or criminal procedure for two years (later extended to four years). *McIntosh*, 395 A.2d at 750–51. The FCRA was enacted during the moratorium period. The appellants argued that the FCRA, as a law providing criminal penalties, could not be enacted lawfully during this moratorium period. *Id.* at 751. This court rejected that argument, holding that the FCRA was enacted lawfully pursuant to the Council's pre-HRA power to make and enforce firearms-related police regulations. *Id.* at 754. The court reviewed the history of the FCRA and, in particular, compared the FCRA to Police Regulations, arts. 50–55, which the FCRA repealed and replaced. The court noted that, like the former police regulations, the FCRA provided for the registration of firearms. *Id.* at 752–53. Indeed, the former police regulations and the FCRA use very similar language to proscribe, *inter alia*, unregistered firearms and unlawful possession of ammunition. *Compare* D.C. Police Regs., arts. 51, 53 *with* D.C. Law 1–85, §§ 201, 601. The court held that because of the long "history of gun control legislation in the District of Columbia," and because the FCRA regulated the same conduct as the former

---

**2.** The OAG acknowledges, as it must, that an offense traditionally enforced by the District as a police regulation may be converted into a penal statute in the nature of a police regulation if the Council sufficiently increases the penalty for its violation. We need not decide the level of increase in penalty that would effectuate such a change; the penalty for violation of UF and UA is not so great as to

render these provisions inappropriate for enforcement by the OAG. *Cf. Crawley*, 978 A.2d at 611 n. 3 (noting that a maximum potential punishment of $100,000 and one year imprisonment per violation of the false claims statute is likely too great a penalty for enforcement by the OAG as a police regulation or municipal ordinance).

police regulations that it repealed and replaced, the FCRA was validly enacted pursuant to the Council's "authority to enact municipal ordinances and local and police and regulatory schemes." *McIntosh,* 395 A.2d at 754.

The modern UF and UA provisions are even more similar to the FCRA as originally enacted than the FCRA was to the police regulations that it repealed and replaced. The police regulations provided only for a fine *or* imprisonment, but not both. By contrast, the UF and UA provisions and the FCRA provide for a maximum penalty of a fine or imprisonment, *or both.* In addition, the language of the UF and UA provisions is almost identical to the language of the FCRA upheld as a police regulation in *McIntosh.* For these reasons, we conclude that the UF and UA provisions, like the FCRA before them, are police regulations, *see McIntosh,* 395 A.2d at 754, despite the fact that they permit a maximum penalty of both fine and imprisonment. *Smith,* 329 A.2d at 130.[3]

The treatment of the UF and UA provisions as regulatory rather than penal in nature comports with the District's long history of firearms regulation. As noted in *McIntosh,* the District long has had the authority to make and enforce "all such usual and reasonable police regulations . . .

necessary for the regulation of firearms." D.C.Code § 1–303.43; *McIntosh,* 395 A.2d at 750. The D.C. Circuit held that this grant of authority gave the Council "ample warrant" to adopt police regulations related to unregistered firearms and ammunition. *Maryland & District of Columbia Rifle & Pistol Ass'n v. Washington,* 442 F.2d 123, 126 (D.C.Cir.1971). Indeed, the court held that this language "could foster no congressional purpose other than to empower the District to promulgate" police regulations relating to unregistered firearms and ammunition. *Id.* at 129. Consistent with the treatment of firearms regulations as regulatory rather than penal, the UF and UA provisions are codified in Title 7 of the D.C.Code, which relates to Human Health Care and Safety, rather than in the titles related to criminal law or procedure. *See McNeely v. United States,* 874 A.2d 371, 390 n. 26 (D.C.2005) (holding that a provision's codification in the title of the D.C.Code "dealing with Health and Safety is some indication that it is considered regulatory in nature"). *Cf. United States v. Cella,* 37 App. D.C. 433, 436 (1911) (the codification of a statute in the chapter of the D.C.Code "devoted to crimes and punishments" is evidence that it is penal in nature).[4]

Moreover, the care that Congress took to prevent the Council from enacting laws

---

3. We reject Hall's argument that the potential for enhanced penalties for repeat violations of the UF provisions and knowing possession of restricted pistol bullets requires that these provisions be considered "penal statutes in the nature of police or municipal regulations" that D.C.Code § 23–101 excludes from the OAG's prosecutorial authority unless the maximum punishment is no more than a fine only or one year's imprisonment. The OAG has conceded that it does not seek authority to prosecute these violations, conviction for which would carry a maximum penalty of more than one year's imprisonment. *See* D.C.Code § 7–2507.06(2A) and (3).

4. Hall does not contend that prosecution for violation of the UF and UA provisions is an unconstitutional infringement of his Second Amendment rights under *District of Columbia v. Heller,* 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008). Indeed, as we have held, a prosecution for violation of similar firearms provisions, such as carrying a pistol without a license, still can be conducted post-*Heller.* *See Brown v. United States,* 979 A.2d 630, 638–39 (D.C.2009).

that purport to alter the duties or powers of the USAO suggests that the Council cannot transfer prosecutorial authority for traditional police regulations from the OAG to the USAO merely by changing the penalty scheme associated with these regulations. In *Smith*, this court considered whether the offense of tampering with a parked motor vehicle, which carried a maximum penalty of a $300 fine or imprisonment for not more than ten days, or both, was properly prosecuted by the USAO or the Corporation Counsel (now the OAG). *Smith*, 329 A.2d at 129. The defendants argued that the fact that violation of the regulation provided a maximum punishment of both fine and imprisonment required the police regulation to be prosecuted by the USAO. The court rejected this argument. Noting that the HRA prohibits the Council from enacting "any act or regulation ... relating to the duties or powers" of the United States Attorney, Pub.L. 93–198, § 602(a)(8) (codified at D.C.Code § 1–206.02(8)), the court held it would be "an absurd result" to permit the District to strip itself of prosecutorial authority for police regulations simply by enacting a penalty that includes both a fine and imprisonment. *Smith*, 329 A.2d at 130. Similarly, in the present case, the offenses currently prosecuted as UF and UA were traditionally prosecuted by the then-Corporation Counsel as police regulations. Although it seems unlikely that the Council would intentionally cede prosecutorial authority to the USAO, it similarly would be "an absurd result," and perhaps in violation of the HRA's prohibition on the shifting of prosecutorial authority, to hold that the Council did so merely by increasing the UF and UA penalties to include a fine and imprisonment.

### III. Conclusion

For the reasons explained above, we hold the OAG is the proper prosecutorial authority for violations of the UF and UA provisions. We remand the case to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*