*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 16-SP-1148

IN RE PROSECUTION OF CLINTON PERROW.

FILED
11/09/2017
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

On Certification from the Superior Court of the
District of Columbia
(CMD-4380-16)

(Hon. Wendell P. Gardner, Jr., Trial Judge)

(Argued February 28, 2017     Decided November 9, 2017)

*Leonard L. Long, Jr.* for Clinton Perrow.

*John D. Martorana*, Assistant Attorney General, with whom *Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, and *Rosalyn Calbert Groce*, Deputy Solicitor General, were on the brief, for the District of Columbia.

*Nicholas P. Coleman*, Assistant United States Attorney, with whom *Channing D. Phillips*, United States Attorney at the time the brief was filed, and *Elizabeth Trosman* and *Nicole McClain*, Assistant United States Attorneys, were on the brief, for the United States.

Before BLACKBURNE-RIGSBY, *Chief Judge*,[*] and GLICKMAN and THOMPSON, *Associate Judges*.

---

[*] Chief Judge Blackburne-Rigsby was an Associate Judge at the time of oral argument. Her status changed to Chief Judge on March 18, 2017.

BLACKBURNE-RIGSBY, *Chief Judge*:  In 2006, the Council of the District of Columbia ("D.C. Council") enacted the Omnibus Public Safety Amendment Act of 2006, which expressly criminalized and defined the crime of "voyeurism" in the District of Columbia, codified as D.C. Code § 22-3531 (2013 Supp.).[1]  Section (g) of the statute designated the "Attorney General for the District of Columbia" as the prosecuting authority for this offense.  This matter has been certified to this court by a judge from the Superior Court of the District of Columbia, pursuant to D.C. Code § 23-101 (f) (2012 Repl.),[2] for this court to consider whether the D.C. Council's assignment of prosecutorial authority for this new offense to the Office of the Attorney General is valid.

---

[1]  See *infra* the attached appendix for the statutory elements making up the crime of voyeurism.

[2]  Under D.C. Code § 23-101 (f):

> If in any case any question shall arise as to whether, under this section, the prosecution should be conducted by the Corporation Counsel [now-Office of the Attorney General] or by the United States attorney, the presiding judge shall forthwith, either on his own motion or upon suggestion of the Corporation Counsel or the United States attorney, certify the case to the District of Columbia Court of Appeals, which court shall hear and determine the question in a summary way . . . .

The D.C. Council's authority to designate the Office of the Attorney General as the prosecuting authority for new criminal offenses is limited by the District of Columbia Court Reform and Criminal Procedure Act of 1970 ("Court Reform Act") and the District of Columbia Home Rule Act ("Home Rule Act"). Together, these congressional acts clarify that the D.C. Council may only assign the Office of the Attorney General as the prosecutorial authority for certain, designated offenses, specifically: (1) "violations of all police or municipal ordinances or regulations," (2) "violations of all penal statutes in the nature of police or municipal regulations, where the maximum punishment is a fine only, or imprisonment not exceeding one year," and (3) prosecutions of "disorderly conduct" or "lewd, indecent, or obscene acts." D.C. Code § 23-101 (a)-(b) (2012 Repl.). The offense of "voyeurism" is a relatively new general offense with elements different from those of "disorderly conduct" or "lewd, indecent, or obscene acts." It also cannot be categorized as either an offense violative of a police or municipal ordinance or regulation, or of a penal statute in the nature of a regulation. Thus, we hold that section (g) of the District's voyeurism statute infringes on "the duties or powers of the United States Attorney," in violation of the Home Rule Act. D.C. Code § 1-206.02 (a)(8) (2012 Repl.). Pursuant to D.C. Code § 23-101 (c), prosecutorial authority for this new offense vests in the Office of the United States Attorney for the District of Columbia, as required by Congress.

## I. Factual Background

The United States Attorney's Office ("USAO") charged Mr. Clinton Perrow by information with one count of misdemeanor voyeurism in violation of D.C. Code § 22-3531 (d).[3] The government alleged that Mr. Perrow used his cell phone to record a woman's "private area"[4] underneath her dress without her knowledge or permission. Mr. Perrow, through counsel, filed a motion to dismiss the information on the ground that USAO was not the proper prosecuting authority because prosecution of the offense of voyeurism rests "exclusively" with the Office of the Attorney General ("OAG"), as stated in section (g) of the voyeurism statute. *See* D.C. Code § 22-3531 (g). USAO opposed the motion, arguing that the D.C. Council may not designate OAG as the prosecuting authority for new offenses that fall outside those offenses specifically assigned by Congress for OAG to prosecute under D.C. Code § 23-101. The trial judge subsequently certified to

---

[3] Section (d) states in relevant part: "[I]t is unlawful for a person to intentionally capture an image of a private area of an individual, under circumstances in which the individual has a reasonable expectation of privacy, without the individual's express and informed consent."

[4] "Private area" is defined as "the naked or undergarment-clad genitals, pubic area, anus, or buttocks, or female breast below the top of the areola." D.C. Code § 22-3531 (a)(2).

this court the question of whether D.C. Code § 22-3531 (g) designating OAG as the proper prosecuting authority for voyeurism is valid.

## II.    Discussion

Prosecutions of criminal offenses in the District of Columbia are "bifurcated" between the federal Office of the United States Attorney for the District of Columbia and the local Office of the Attorney General of the District of Columbia. *United States v. Bailey*, 495 A.2d 756, 760 n.10 (D.C. 1985). This bifurcation of prosecuting authority was delineated by Congress pursuant to its enactment of the District of Columbia's Court Reform Act and codified under D.C. Code § 23-101. "Neither the Council nor the electors of the District of Columbia can overrule acts of Congress." *Hessey v. District of Columbia Bd. of Election and Ethics*, 601 A.2d 3, 16 (D.C. 1991).

Specifically, Congress designated OAG to prosecute violations of "police or municipal ordinances or regulations" in the District of Columbia. D.C. Code § 23-101 (a).[5] Consequently, the D.C. Council may designate OAG as the prosecuting

---

[5] Section (a) states:

(continued…)

authority for new or revised police or municipal ordinances or regulations "irrespective of the fact that violation of these provisions [may carry] a maximum penalty of both a fine and imprisonment." *In re Hall*, 31 A.3d 453, 456 (D.C. 2011). Congress also designated OAG to prosecute "all penal statutes *in the nature* of police or municipal regulations, where the maximum punishment is a fine only or imprisonment not exceeding one year . . . ." D.C. Code § 23-101 (a) (emphasis added). We have clarified that this limitation on punishment (fine only *or* imprisonment of not more than one year) pertains only to OAG's authority to prosecute *penal* statutes *in the nature of* police or municipal regulations. *District of Columbia v. Smith*, 329 A.2d 128, 130 (D.C. 1974). OAG retains "prosecutorial jurisdiction over all police [or municipal] regulation violations, regardless of potential penalty . . . ." *Id.*

---

(…continued)

> Prosecutions for violations of all police or municipal ordinances or regulations and for violations of all penal statutes in the nature of police or municipal regulations, where the maximum punishment is a fine only, or imprisonment not exceeding one year, shall be conducted in the name of the District of Columbia by the Corporation Counsel for the District of Columbia or his assistants [now-OAG], except as otherwise provided in such ordinance, regulation, or statute, or in this section.

Additionally, Congress designated OAG as the prosecuting authority for violations of D.C. Code § 22-1321 (2012 Repl.), "relating to disorderly conduct," and violations of D.C. Code § 22-1312 (2012 Repl.), "relating to lewd, indecent, or obscene acts[.]" D.C. Code § 23-101 (b). However, Congress reserved "[a]ll other criminal prosecutions" in the District of Columbia to be "conducted in the name of the United States by the United States [A]ttorney for the District of Columbia or his assistants, except as otherwise provided by law." *Id.* § (c).

In *In re Crawley*, 978 A.2d 608, 609 (D.C. 2009), this court clarified that the language "except as otherwise provided by law" under D.C. Code § 23-101 (c) does not give the D.C. Council authority to bypass Congress and designate OAG as the prosecuting authority for new crimes outside of sections (a) and (b) that did not exist at the time Congress passed the Court Reform Act. *Id*. at 614, 617. We further explained that while, pursuant to the Home Rule Act, Congress authorized the D.C. Council to enact new criminal statutes, "subject to a sixty-day period when Congress can nullify such legislation," Congress expressly precluded the D.C. Council from enacting any legislation that affects the "duties or powers of the United States Attorney . . . for the District of Columbia." *Id.* at 611 (quoting D.C. Code § 1-206.02 (a)(8) & (9)). Because allowing the D.C. Council to designate OAG as the prosecuting authority for new or revised offenses that would otherwise

be the responsibility of USAO would affect the duties and powers of USAO, we held that the D.C. Council "lacks the authority to designate the OAG as the prosecutor of offenses that are not specified in Section 23-101 (c)." *Id.* at 614; *see also id*. at 620.

In short, while the Home Rule Act authorizes the D.C. Council to enact new criminal statutes, the D.C. Council's authority to designate OAG as the prosecuting authority for those new criminal offenses is limited by Congress through both the Home Rule Act and the Court Reform Act. The D.C. Council may not designate OAG as the prosecuting authority for an offense outside of those specified by Congress under D.C. Code § 23-101 (a)-(b).[6] Any offenses that fall outside of those two categories are reserved for USAO, and the D.C. Council's designation of OAG violates the Home Rule Act because it infringes on the "duties or powers of

---

[6] Mr. Perrow claims that the language "except as otherwise provided by law" under D.C. Code § 23-101 (c) authorizes the D.C. Council to assign OAG as the prosecuting authority. But this argument has been foreclosed by our decision in *In re Crawley*, where the court expressly held that the D.C. Council cannot designate OAG as the prosecuting authority for any offense outside of those described in D.C. Code § 23-101 (a)-(b). *See* 978 A.2d at 614. To the extent Mr. Perrow also argues that Congress must have approved the delegation of prosecuting authority to OAG by its failure to exercise its veto within the sixty-day review period, this argument is also unpersuasive because such an interpretation would essentially render Congress's strict limitations on the D.C. Council's authority to delegate prosecution meaningless, along with our review of the D.C. Council's authority.

the United States Attorney . . . for the District of Columbia." D.C. Code § 1-206.02 (a)(8).

With that legislative background in mind, we turn to the voyeurism statute at issue, which was enacted by the D.C. Council in 2006. The relevant section of the voyeurism statute that relates to Mr. Perrow's prosecution is D.C. Code § 22-3531 (d), which states that "it is unlawful for a person to intentionally capture an image of a private area of an individual, under circumstances in which the individual has a reasonable expectation of privacy, without the individual's express and informed consent." Prosecutorial authority can properly be vested in OAG pursuant to section (g) of the voyeurism statute if our analysis determines that the crime of voyeurism constitutes a police or municipal ordinance or regulation, a penal statute "in the nature" of a police or municipal regulation, or a violation of either the "disorderly conduct" statute or the "lewd, indecent, or obscene acts" statute. *See In re Crawley*, *supra*, 978 A.2d at 620 ("[O]nly Congress can alter the prosecutorial authority [of OAG], be it for felonies, misdemeanors, or other crimes . . . .").

We conclude that the offense of voyeurism is fundamentally different from both "lewd, indecent, or obscene acts" or "disorderly conduct" because those

crimes have different elements and were intended to criminalize different behavior. In determining whether OAG is authorized to prosecute voyeurism, we must determine whether the crime of voyeurism has essentially the same criminal elements as either "disorderly conduct" or "lewd, indecent, or obscene acts" as defined by their respective statutes.[7]

Under the District's "lewd, indecent, or obscene acts," statute, "[i]t is unlawful for a person, in public, to make an obscene or indecent exposure *of his or her* genitalia or anus, to engage in masturbation, or to engage in a sexual act . . . . It is [also] unlawful for a person to make an obscene or indecent sexual proposal to a minor." D.C. Code § 22-1312 (emphasis added). The District's voyeurism statute criminalizes the viewing, recording, or capturing of an image of *another* individual's private area or private acts.[8] *See, e.g.*, *Bell v. United States*, 950 A.2d 56, 73 (D.C. 2008) (crimes are not the same if the elements are "clearly distinct");

---

[7] *See* The District of Columbia Court Reform and Criminal Procedure Act of 1970, Public Law 91-358, 84 Stat. 473, 605 (1970) ("Prosecutions for violations of section 6 of the Act of July 29, 1892 (D.C. Code, sec. 22-1107) [now-D.C. Code § 22-1307] relating to disorderly conduct, and for violations of section 9 of that Act (D.C. Code, sec. 22-1112) [now-D.C. Code § 22-1312], relating to lewd, indecent, or obscene acts, shall be conducted in the name of the District of Columbia by the Corporation Counsel or his assistants [now-OAG].").

[8] Such as "[u]sing a bathroom or rest room; . . . [t]otally or partially undressed or changing clothes; or . . . [e]ngaging in sexual activity." D.C. Code § 22-3531 (c)(1)(A)-(C).

see *infra* appendix. This court has noted that, in the case of the crime of "lewd, indecent, or obscene acts," it is "the indecent exposure of the comparable portions of the male and female anatomy that constitutes the crime. In other words, the indecent exposure of human genitalia is the offense." *Parnigoni v. District of Columbia*, 933 A.2d 823, 829 (D.C. 2007) (citation and internal quotation marks omitted). The critical element for voyeurism, however, is not the exposure of one's own genitalia, but rather the act of secretly viewing, recording, or photographing another individual's genitalia or private acts, in which that individual has a reasonable expectation of privacy. The voyeurism statute "by its terms is directed at protecting individual privacy." *Freundel v. United States*, 146 A.3d 375, 379 (D.C. 2016). The intent behind the voyeurism statute and the intent behind the "lewd, indecent, or obscene acts" statute are thus different and the acts the statutes proscribe cannot be considered the same offense.[9] *See, e.g.*, *Haye v. United States*, 67 A.3d 1025, 1028 (D.C. 2013) (observing that, under the *Blockburger* "same-elements" test, the inquiry is "whether each offense contains

_____

[9] OAG also argues that Congress assigned to OAG the responsibility to prosecute any acts that may be deemed "lewd," "obscene" or "indecent." But as OAG admits, this court in *District of Columbia v. Walters* struck down a broad and vague definition of the offense of "lewd, indecent, or obscene acts." 319 A.2d 332, 335 (D.C. 1974) (concluding that a former definition of the crime of "lewd, indecent, or obscene acts" was unconstitutionally vague because the statute did not define what constitutes a "lewd," "obscene," or "indecent" act with specificity). The current statutory definition of "lewd, indecent, or obscene acts" contains very specific and very different elements from the elements of the offense of voyeurism.

an element not contained in the other" to determine whether two crimes constitute the "same offense") (internal quotation marks and citations omitted).

Voyeurism also cannot be classified as "disorderly conduct." The disorderly conduct statute, D.C. Code § 22-1321, criminalizes eight categories of behavior, none of which feature the same elements as voyeurism. *See id.* § (a)-(g). The only category of behavior that is prosecuted by OAG under the disorderly conduct statute and that bears any similarity to voyeurism is the category of so-called "Peeping Tom" conduct, which is described in subsection (f).[10] As amended in 2010,[11] D.C. Code § 22-1321 (f) states: "It is unlawful for a person to stealthily look into a window or other opening of a dwelling . . . under circumstances in

_____

[10] "Peeping Tom is a term generally understood to describe a person who stealthily peeps in windows to observe women." *District of Columbia v. Jordan*, 232 A.2d 298, 299 (D.C. 1967). Prior to the 2010 amendments, "Peeping Tom" activities were prosecuted as disorderly conduct in the District under a theory that the defendant intended to "provoke a breach of the peace," as "[t]he offense known as breach of the peace embraces a great variety of conduct destroying or menacing public order and tranquility." *Id.* (noting that a previous version of the District's disorderly conduct statute provided: "Whoever, with intent to provoke a breach of the peace, or under circumstances such that a breach of the peace may be occasioned thereby . . . acts in such a manner as to annoy, disturb, interfere with, obstruct, or be offensive to others . . . .") (citation and internal quotation marks omitted). As we stated in *Jordan*, "[t]he activities of a peeping Tom would certainly constitute a menace to the tranquility of a neighborhood." *Id.*

[11] *See* Disorderly Conduct Amendment Act of 2010, D.C. Law 18-375 (2010).

which an occupant would have a reasonable expectation of privacy. It is not necessary that the dwelling be occupied at the time the person looks into the window or other opening."[12] This offense differs from the crime of voyeurism in two critical ways.

First, the "Peeping Tom" offense does not contemplate the act of video recording or photographing an individual's "private area" or other private acts, which the voyeurism statute does criminalize. *See* D.C. Code § 22-3531 (c)(1) & (d) ("[I]t is unlawful for a person to electronically record . . . . [or] "to intentionally capture" an image of a private area of an individual area . . . ."). Second, the "Peeping Tom" offense does not require the government to prove that the defendant intentionally sought to view the private area or private activities of another individual without their consent. In fact, the "Peeping Tom" offense does not even require the defendant to intend to peer into an occupied room or house.

_____

[12] Unlike voyeurism, which is a wholly new offense enacted in response to technological advances, "Peeping Tom" offenses have historically been criminalized as part of the District's disorderly conduct statute under a breach of the peace theory. The D.C. Council is thus within its authority to amend the disorderly conduct statute to expressly criminalize "Peeping Tom" behavior under D.C. Code § 22-1321 (f) and to provide for OAG prosecution of the offense. *See, e.g.*, *In re Hall*, *supra*, 31 A.3d at 454-55 (concluding that OAG is the appropriate prosecuting authority for the crimes of possession of firearms and ammunition because the current statutes are "direct descendants of police regulations that similarly prohibited the possession of unregistered firearms and the unlawful possession of ammunition" that OAG formerly prosecuted).

D.C. Code § 22-1321 (f) ("It is not necessary that the dwelling be occupied at the time the person looks into the window or other opening."). Instead, the "Peeping Tom" variety of disorderly conduct simply criminalizes the act of "look[ing] into the window or other opening . . . in which an occupant would have a reasonable expectation of privacy." *Id.* It does not particularly matter what the defendant intended to view. Voyeurism, on the other hand, requires the government to demonstrate that the defendant specifically intended to observe, record, or photograph an individual "[u]sing a bathroom or rest room," "totally or partially undressed or changing clothes," or "[e]ngaging in sexual activity," or "to capture an image of a private area of an individual." D.C. Code § 22-3531 (b)-(d). These are very different offenses. For example, a defendant who peers into the unoccupied home of another can be prosecuted for acting as a "Peeping Tom," but cannot be prosecuted for voyeurism. On the other hand, a defendant who secretly tapes women undressing in a locker room using a hidden camera can be prosecuted for voyeurism, but cannot be prosecuted as a "Peeping Tom" because the defendant did not peer "into a window or other opening of a dwelling" through his action of using a hidden camera.[13]

---

[13] Our conclusion that voyeurism is not a species of "Peeping Tom"-disorderly conduct is further bolstered by the legislative history of the Omnibus Public Safety Act and the Disorderly Conduct Amendment Act. Former-Attorney General Robert J. Spagnoletti testified in 2005 on the need for a separate electronic

(continued…)

While we may contemplate circumstances where a defendant is committing both voyeurism and the "Peeping Tom" variety of disorderly conduct by his or her actions, that alone does not make voyeurism and "Peeping Tom" disorderly conduct the same offense. This court has said the fact that two offenses might "coincidentally overlap" does not make them the same offense and "cannot be imputed as an inherent element of the crime." *Kaliku v. United States*, 994 A.2d 765, 788 (D.C. 2010).

Consequently, because the voyeurism statute also cannot be characterized as a police or municipal ordinance or regulation or a penal statute in the nature of a police or municipal regulation,[14] and Mr. Perrow and OAG do not argue otherwise,

---

(…continued)

voyeurism statute "designed to fill a void in the District's criminal code by establishing more appropriate crimes . . . in line with other states that have outlawed surreptitious viewing, taping, and dissemination of private activities." D.C. Council, Report on Bill 16-247, Testimony of Attorney General Robert J. Spagnoletti, at 37-38 (Apr. 28, 2006). Further, in revising the offense of disorderly conduct, the United States Attorney's Office stated that, "The 'voyeurism' statute . . . was not meant to replace the disorderly conduct statute with respect to 'peeping toms.'" D.C. Council, Report on Bill 18-425, Letter from Special Counsel Patricia A. Riley, at 2 n.1 (Nov. 18, 2010).

[14] Mr. Perrow and OAG do not contend that the law criminalizing voyeurism is a police or municipal ordinance or regulation, or a penal statute in the nature of a police or municipal regulation, nor would such an argument be successful. It is not a police ordinance or regulation because voyeurism is a D.C. Council enactment, not a pronouncement from the police department. Moreover, it

(continued…)

*see, e.g.*, *In re Hall*, *supra*, 31 A.3d at 456-57, the voyeurism statute does not fall under OAG's prosecutorial authority under either D.C. Code § 23-101 (a), pertaining to police or municipal ordinances or regulations, or section (b), pertaining to violations of disorderly conduct or lewd, indecent, or obscene acts. The D.C. Council thus did not have the authority under the Home Rule Act, *see* D.C. Code § 1-206.02 (a)(8), to confer upon OAG the authority to prosecute the crime of voyeurism. "[O]nly Congress can alter the prosecutorial authority described in [D.C. Code § 23-101], be it for felonies, misdemeanors, or other crimes . . . ." *In re Crawley*, *supra*, 978 A.2d at 620.

---

(…continued)

is not a municipal ordinance or regulation. In *United States v. Cella*, 37 App. D.C. 433, 435 (1911), the predecessor to this court characterized a general criminal offense as having at least two distinguishing characteristics, as opposed to acts proscribed by regulation or ordinance. First, general offenses deal "with a subject-matter general in nature," even if it "is local in its application." *Id.* at 436. Second, general offenses are typically found in "the chapter of the Code devoted to crimes and punishments . . . ." *Id.* The voyeurism statute is general in its subject-matter and found in the chapter of the D.C. Code designated for criminal offenses. *But see In re W.M.*, 851 A.2d 431, 442 (D.C. 2004) (noting that the location of a statutory provision within the Code, in and of itself, is not dispositive on whether a provision is classified as civil or criminal in nature). Further, while OAG is also authorized to prosecute "penal statutes *in the nature* of police or municipal regulations" under D.C. Code § 23-101 (a) (emphasis added), this category of offenses is not relevant here. The law proscribing voyeurism is not in the nature of a regulation for the reasons stated earlier. Second, OAG is only authorized to prosecute such penal statutes "where the maximum punishment is a fine *only, or* imprisonment not exceeding one year . . . ." *Id.* (emphasis added). The maximum penalty for misdemeanor voyeurism is a fine *and* imprisonment of not more than one year. *See* D.C. Code 22-3531 (f)(1).

### III.   Conclusion

The D.C. Council lacked authority under the Home Rule Act to designate OAG as the prosecuting authority for the offense of voyeurism because it is not one of the offenses specifically delineated to OAG by Congress under D.C. Code § 23-101 (a)-(b).   Although the D.C. Council is authorized to enact legislation creating new criminal offenses, such as the voyeurism offense, the D.C. Council is precluded by Congress from "[e]nact[ing] any act or regulation . . . relating to the duties or powers of the United States Attorney."   D.C. Code § 1-206.02 (a)(8). Accordingly, section (g) of the voyeurism statute is invalid.  We therefore remand this case to the Superior Court for proceedings consistent with this opinion.

*So ordered.*

### Appendix

The District's voyeurism statute, D.C. Code § 22-3531, states in full:

(a) For the purposes of this section, the term:

(1) "Electronic device" means any electronic, mechanical, or digital equipment that captures visual or aural images, including cameras, computers, tape recorders, video recorders, and cellular telephones.

(2) "Private area" means the naked or undergarment-clad genitals, pubic area, anus, or buttocks, or female breast below the top of the areola.

(b) Except as provided in subsection (e) of this section, it is unlawful for any person to occupy a hidden observation post or to install or maintain a peephole, mirror, or any electronic device for the purpose of secretly or surreptitiously observing an individual who is:

(1) Using a bathroom or rest room;

(2) Totally or partially undressed or changing clothes; or

(3) Engaging in sexual activity.

(c)(1) Except as provided in subsection (e) of this section, it is unlawful for a person to electronically record, without the express and informed consent of the individual being recorded, an individual who is:

(A) Using a bathroom or rest room;

(B) Totally or partially undressed or changing clothes; or

(C) Engaging in sexual activity.

(2) Express and informed consent is only required when the individual engaged in these activities has a reasonable expectation of privacy.

(d) Except as provided in subsection (e) of this section, it is unlawful for a person to intentionally capture an image of a private area of an individual, under circumstances in which the individual has a reasonable expectation of privacy, without the individual's express and informed consent.

(e) This section does not prohibit the following:

(1) Any lawful law enforcement, correctional, or intelligence observation or surveillance;

(2) Security monitoring in one's own home;

(3) Security monitoring in any building where there are signs prominently displayed informing persons that the entire premises or designated portions of the premises are under surveillance; or

(4) Any electronic recording of a medical procedure which is conducted under circumstances where the patient is unable to give consent.

(f)(1) A person who violates subsection (b), (c), or (d) of this section is guilty of a misdemeanor and, upon conviction, shall be fined not more than the amount set forth in § 22-3571.01 or imprisoned for not more than 1 year, or both.

(2) A person who distributes or disseminates, or attempts to distribute or disseminate, directly or indirectly, by any means, a photograph, film, videotape, audiotape, compact disc, digital video disc, or any other image or series of images or sounds or series of sounds that the person knows or has reason to know were taken in violation of subsection (b), (c), or (d) of this section is guilty of a felony and, upon conviction, shall be fined not more than the amount set forth in § 22-3571.01 or imprisoned for not more than 5 years, or both.

(g) The Attorney General for the District of Columbia, or his or her assistants, shall prosecute a violation of subsection (b), (c), or (d) of this section for which the penalty is set forth in subsection (f)(1) of this section.